105 199
s 112 254

AALTJE JANSEN v. JOHN McQUEEN.

[See 99 Mich. 436.]

*Fraudulent conveyances—Husband and wife—Sale—Change of possession—Evidence—Instructions to jury—Deed—Estoppel.*

1. An instruction in an action of trover brought by a wife for property attached by her husband's creditors five days after he had executed to her a bill of sale of the property, that if there was no immediate delivery of the property, and no actual and continued change of possession, the burden of proof was upon the plaintiff to show that the sale was made in good faith, and without intent to defraud creditors, is not open to the objection that the jury must have understood that what was meant by the expression "immediate delivery" was "instantaneous delivery;" the testimony tending to show that, for two days after the execution of the bill of sale, the husband continued to care for the property, and on the third day left for another state, leaving his son in charge of the property, and that on the third day, while the son was using the property for his father in his business, a portion of the indebtedness for which the property was attached was contracted, under circumstances tending strongly to show that the husband could not reasonably have expected to pay for the goods thus obtained.

2. A wife sued in trover for property which had been attached by her husband's creditors. For the purpose of showing title, she sought to establish the fact that she had in her own right real estate from which she received a revenue sufficient to enable her to make certain loans to her husband, in part extinguishment of which the bill of sale to her of the attached property was, as she claimed, given. Her testimony tended to show that she furnished the money used in the purchase of said lands; that the title was taken in her husband's name, she supposing that it should be so taken; that some years later, on learning that a married woman could hold property in her own name, at her request, her husband conveyed the land to her. And it is held that the jury should have been instructed as requested by the plaintiff:

*a*—That if the deed from the husband was given without any intent to defraud his creditors, and in fact did not defraud them at the time it was executed, it conveyed the entire right and title of the husband in and to the land to the wife, whether the land had been purchased originally with her money or not.

*b*—That if the jury should find that said land was purchased with the plaintiff's money, and the title placed in the name of her husband, and that he, in recognition of her right to the ownership of the land, deeded the same to her at her request, such deed would convey the entire right and title of her husband in said land acquired by such original conveyance to him, and his subsequent creditors could not object to or attack the validity of said deed.

3. One parcel of land was purchased from an administrator, who conveyed it to the husband, and he conveyed it by warranty deed to plaintiff. A second deed was afterwards executed to the husband by the administrator under proceedings taken to cure a defect in the first deed, growing out of the want of proper proceedings upon which to base it. And it is held that the plaintiff was entitled, as a matter of right, to an instruction that the title acquired by the husband by reason of the second deed inured to the benefit of the plaintiff.

Error to Kent. (Grove, J.) Argued April 4, 1895. Decided April 30, 1895.

Trover. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Dodge & Eastman,* for appellant.

*Wolcott & Ward,* for defendant.

MONTGOMERY, J. This is an action of trover to recover damages for the alleged conversion of four horses, two double harnesses, etc., levied upon and sold by the defendant, acting as sheriff, under an execution against Daniel M. Jansen, plaintiff's husband. Mr. Jansen had been engaged in business as a string butcher, and from time to time made purchases of Nelson Morris & Co., who were engaged as wholesale dealers in meat. On

the 14th day of May, 1892, Jansen, for the stated consideration of $700, made a bill of sale of the property in question to plaintiff. There was testimony tending to show that plaintiff owned the barn in which the horses were kept, and leased the same to her husband; that, after the execution of the bill of sale, Daniel M. continued to care for the horses during that day and the next, which was Sunday, and that the following Monday he left home, and went to Milwaukee, but that he left his son in charge of the business, and that he (the son) used the horses in such business, and that, while he was using them for his father, a portion of the indebtedness to Nelson Morris & Co. was contracted, under circumstances which tend very strongly to show that Daniel M. could not reasonably have expected to pay for the goods obtained.

1. The circuit judge charged the jury, in effect, that if there was no immediate delivery of the property, and no actual and continued change of possession, then, by the terms of How. Stat. § 6190, the burden of proof rested upon the plaintiff to show that the sale was made in good faith, and without intent to defraud creditors. It is contended that this instruction was misleading, as the jury must have understood that what was meant by the expression "immediate delivery" was instantaneous delivery, and it is contended that this was too literal an intrepretation of the statute. We think, however, that the jury could hardly have so understood this instruction, nor do we think the true import could have been well misunderstood, as applied to the facts of this case. If there was in fact no change in the *indicia* of ownership, and if, in consequence of this fact, Nelson Morris & Co. were induced to extend credit on Monday, when they would not otherwise have done so, it is clear that the immediate delivery contemplated and made necessary by the statute did not take place. *Kipp v. Lamoreaux*, 81 Mich. 299. We do not mean to intimate that a brief delay in the delivery of property sold, when there

has been no change in the situation of creditors or of the parties to be considered, will have the effect to shift the burden of proof under this statute. But such is not this case as made by the defendant.

2. For the purpose of showing title, the plaintiff went at length into the dealings between herself and husband, by which means she sought to establish the fact that she had in her own right property from which she received a revenue sufficient to enable her to make certain loans to her husband, in part extinguishment of which the bill of sale in question was claimed by her to have been given. She gave testimony tending to show that she brought with her from the old country quite a sum of money, and that as early as 1878 she made a purchase of real estate in the city of Grand Rapids, and bought other pieces of real estate from time to time; that, when she bought this real estate, she supposed the title should be in the name of her husband, and the deeds were accordingly taken in his name, but that in 1885 she learned that she was mistaken in this, and thereupon requested him to deed the property to her, which he did; that among the pieces of property was one lot in conveying which an error had been made in the deed running to Daniel M. Jansen, made in 1884; that, without discovery of this error, this property was deeded by a warranty deed to the plaintiff, on November 16, 1885; that subsequently the mistake was discovered, and in 1887 the title perfected by a deed running to Daniel M. Jansen; and that the title remained in this state until May 4, 1892, when Daniel M. Jansen executed a deed to the plaintiff. The defendant offered testimony tending to show that Mr. Jansen had exercised acts of ownership over the real estate; that he had employed a man to put in a well on the property, and had listed some of it with a real estate agent for sale, as his own property.

The plaintiff requested the court to charge the jury as follows:

"If you find from the evidence in this case that the

warranty deed of November 16, 1885, of the lot known in the evidence in this case as 'lot No. 5,' from Daniel M. Jansen to Aaltje Jansen, was given without any intention of defrauding the creditors of the said Daniel M. Jansen, and in fact did not defraud such creditors at that time, you are instructed that such deed would convey the entire right and title of the said Daniel M. Jansen in and to the said lot 5 to Aaltje Jansen, whether the same had been purchased originally with her money or not, as, under such circumstances, he had a right to make his wife a gift of said property, and subsequent creditors have no right to complain of the same."

And also another request, as follows:

"If you should find that said lot 5 was purchased by Aaltje Jansen with her money, and the title to the same was placed in the name of her husband, Daniel M. Jansen, at that time, and that he afterwards, in recognition of her right to the ownership of the lot, executed a warranty deed of the same to her at her request, you are instructed that such deed would convey the entire right and title in said lot of the said Daniel M. Jansen, acquired by such original conveyance to him, and subsequent creditors of the said Daniel M. Jansen cannot object to or attack the validity of such deed."

And, also:

"By the execution and delivery of the warranty deed from Daniel M. Jansen to Aaltje Jansen, November 16, 1885, of lot 5, all title of said lot which he afterwards acquired by reason of the administrator's deed of 1887 inured to the benefit of the said Aaltje Jansen."

These requests the court refused to give, but charged the jury as follows:

"The title to the property—the real estate—is not involved in this suit, but the title merely to the horses, harness, and the bundle of straps; but the whole relations of the parties to each other during their whole married life, nearly, and their handling of property, have been admitted in evidence in this case, not for the purpose of determining their title to the realty, but as bearing upon the question of whether or not the fraud has been perpetrated with reference to this suit; and all of

these facts and circumstances are to be considered only in so far as they tend to a solution of the question here involved,—whether or not the property was the property of Mr. Jansen, and whether or not it was fraudulently conveyed."

We think this instruction was misleading, and that the requests preferred should have been given. It is true that the title to the real estate was not the principal question in the case, but it was one question; for, clearly, if the jury found that the plaintiff's claim to ownership of the real estate was ill founded, there was no source from which she could have derived the moneys to make the advances. As this question was made a material one by the course which the testimony took on both sides, it was quite essential that the jury should not be left to grope in the dark in determining, as a preliminary inquiry, who owned the real estate. We might be able to say that, so far as the question of fact involved as to the ownership is concerned, the jury would have felt authorized to consider that, under the instruction given. But the effect of the deed of lot 5, made November 16. 1885, was a legal question, upon which an instruction from the court was not only appropriate, but, if asked for by counsel, a matter of right.

There are other objections urged, which we do not deem it necessary to consider, as they are not likely to arise upon another trial of the case.

Judgment reversed, and new trial ordered.

McGRATH, C. J., GRANT and HOOKER, JJ., concurred. LONG, J., did not sit.