JANSEN *v.* McQUEEN.

1. EVIDENCE—COURT FILES—ATTACHMENT.
   The files in an attachment suit are admissible in evidence in trover against the attaching officer, although no affidavit is attached to the original writ, where such affidavit is shown to have been attached at the time of the levy.

2. FRAUDULENT CONVEYANCES—EVIDENCE.
   Evidence as to the source from which a wife obtained the money paid for real estate conveyed to her is admissible upon an issue whether a subsequent transfer. of personalty from the husband to the wife was fraudulent as to his creditors.

3. EVIDENCE—CONSPIRACY TO DEFRAUD.
   Where some testimony has been introduced tending to show a conspiracy to defraud, evidence of statements made by one of the conspirators, in furtherance of the common purpose, is admissible against the others.

Error to Kent; Grove, J. Submitted February 10, 1897. Decided March 29, 1897.

Trover by Aaltje Jansen against John McQueen. From a judgment for defendant, plaintiff brings error. Affirmed.

*Dodge & Eastman,* for appellant.

*Wolcott & Ward,* for appellee.

MOORE, J. This case has been here before, and is reported in 105 Mich. 199. Many of the questions presented in the present record were in the case when it was here before. Those questions must be treated as *res judicata.*

Briefly stated, this is an action of trover, in which plaintiff seeks to recover for the value of four horses and other property which had been levied upon by the defendant, who was the sheriff of Kent county, in whose hands

was a writ of attachment running against the husband of plaintiff at the suit of Nelson, Morris & Co. Plaintiff objected to the receipt of the files in the case, because no sufficient affidavit was attached to the original writ of attachment. The testimony of the sheriff and the files show this objection is without force. While the affidavit was not attached to the writ at the time of the trial, the evidence disclosed that it was attached to it at the time of the levy.

The trial judge allowed counsel to cross-examine plaintiff as to the sources from which she got the money which paid for the real estate that was conveyed to her in 1885, and to contradict her testimony in relation thereto. This is said to be error. The court charged the jury in relation to that testimony as follows:

"The ownership of the real estate concerning which testimony has been offered is not involved in this suit, in the least. It must be taken as a settled fact in this case, for the purposes of this suit, that Mrs. Jansen owned all the real estate, and had owned the same since November 16, 1885, and was entitled to the rents and profits therefrom during all of the time since that date. If you should find that Mrs. Jansen's income from rents of her real estate during 1890 and 1891, and to May 14, 1892, amounted to about $60 per month, you have a right to consider this, in determining her ability to purchase the horses, the single harness, and make the loans to her husband as she claims. There is no question, gentlemen, but that, under the evidence in this case, she had ability to make the loans; rents were hers; but the contention raised on the part of the defendant is that she did not make the loans; that the money which she passed to her husband was not intended, at the several times it was passed, as loans. And it is claimed on the part of the defense that, during the four years prior to the commencement of the meat business by Jansen, he was earning large wages,—$21 a week,—and prior to that, for quite a period, $18 a week, and prior to that $15, and that he was industrious, and that he brought home his money to his wife, excepting his personal expenses, and that she had his money as well as her own. And it is claimed on the part of the defendant that, when she let

him have these several sums of money, it was not understood between them, or intended, that it was a loan of her own money to him. The defense claim that this idea of a loan is an afterthought; that, as between Mr. and Mrs. Jansen, she owned the real estate at that time conveyed, and was in 1885, as against him, entitled to the rents and profits, and they belonged to her. So that there is no question about that. But the question for you to determine is whether or not the parties treated the moneys that Mr. Jansen had from time to time received from the plaintiff as loans, as she claims, whether or not they were intended as loans, or whether or not it was not in consideration of the fact that she had and handled his money as well as her own. * * *

"Where the question of fraud is involved, as in this case, it is the duty of the court to extend to counsel upon both sides a very wide latitude of inquiry, because it often depends upon circumstances, or a combination of circumstances, whether or not a fraud had been perpetrated; and, in cases where the question of fraud is involved, quite an extreme latitude of inquiry has to be given to counsel upon both sides,—on both sides of the question of fraud,—and for that reason in this case a very wide range has been taken in the introduction of testimony. The title to the property, the real estate, is not involved in this suit,—the title merely to the horses, the harnesses, and the bundle of straps; but the whole relations of the parties to each other through their whole married life, nearly, and their handling of property between themselves, has been admitted in evidence in this case, not for the purpose of determining the title to the realty, which I told you before was unquestionably in Mrs. Jansen since 1885, but as bearing upon the question of whether or not the fraud has been perpetrated with reference to this suit, and all of these facts and circumstances are to be considered only in so far as they tend to a solution of the question here involved, namely, whether or not the property was the property of Mrs. Jansen, and whether or not it was fraudulently conveyed."

For the purpose stated by the learned judge, we think the testimony was competent.

The plaintiff claimed to own the horses by purchase of them from third parties; her husband not to have the title until he had paid her for them. It was the claim of

the defendant that that was not true. He claimed that the horses belonged to the husband; that, for the purpose of defrauding his creditors, she entered into an arrangement with her husband and her son to defraud them, and for the purpose of carrying out that arrangement, on Saturday, the 14th day of May, 1892, he made a bill of sale to her of the property in question; that on the same day she helped him to buy a suit of clothes, and they together, from the proceeds of meat bought of Nelson, Morris & Co., paid a note she had signed, long before it became due; that Monday her husband took an early train and left the State; that her son then took the team, with her knowledge, and instead of getting the usual quantity of meat, $30 or $40 worth, got upwards of $130 worth, and converted it into money, and paid to her $100 of it. He gave evidence tending to show the truth of this contention. The trial judge allowed the defendant to show what the son said when he got the meat. This is said to be error, because the plaintiff was not present. We think it part of the *res gestæ*, and tended to establish the theory for which the defendant was contending.

We do not think it necessary to discuss the other assignments of error.

Judgment affirmed.

The other Justices concurred.